## Hartman *versus* Shaffer.

1. A promissory note imports a valuable consideration.

2. In a suit on a note, the defence being want of consideration, without evidence to cast suspicion on the transaction, the pecuniary circumstances of the parties are irrelevant, and calculated to mislead.

3. The evidence in this case sufficient to submit to the jury the question of want of consideration of a note.

March 19th 1872.    Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ.    AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Northampton county:* No. 194, to January Term 1872.

On the 20th of May 1869, Francis Hartman brought an action of assumpsit against Hannah Shaffer, executrix, &c., of Christian Shaffer, deceased.

The declaration was on a note signed by the decedent for $4300, dated March 24th 1863, and payable two years after date.

The cause was tried May 3d 1871, before Longaker, P. J.

The plaintiff called Cecilia Hartman, his daughter, and granddaughter of the decedent, who, on her examination in chief, testified, that she wrote the note at decedent's house, her brother Peter and her grandfather were by; her father, grandfather, and Peter calculated the old notes, and then the note was written for $4300, and then the decedent signed it in her presence.

On cross-examination she said that the decedent's wife and daughter Hannah were living with him; Hannah was not then at home; the wife was in the other room; the door was closed; she was not called to come in when the note was written; witness did not tell Hannah when she came home; did not tell her or the wife before the decedent's death; nor her own mother. The decedent died about January 1st 1864, and was then between 91 and 92 years old. The plaintiff lived about two miles away. After witness sat down to write the note they laid two notes down for her to copy from; her father also said she should write the note; they said they had given two old notes, one for $1500 and one for $349. Witness did not see what became of the notes; both gave her the amount of the note; she read the note after it was signed so that both understood it; she read it in English because it was written in English; did not explain it in German; the decedent did not speak English; the family conversation was in German; she did not know what they did with the old notes nor with the new one; Peter came in just as she was finishing the note and saw the note signed; her father it was who called her to come in; she did not see any money paid by her father to her grandfather; the decedent's wife died after him.

Plaintiff called Peter Hartman, his son, who testified that he saw the decedent sign the note under the circumstances stated by

[Hartman *v.* Shaffer.]

Cecilia. He told the widow of the decedent after his death that the note had been signed; did not tell the plaintiff, she and he were not good friends.

The plaintiff then gave the note in evidence, viz:

"Hellertown, March 24th 1863.

"tow years after date I prommis to pay Francis Hartman the sum for thousad three hundred dolles for value receive with out defalcation.          CHRISTIAN SCHAFFER."

[Signature in German letters.]

The defendant called Solomon Hess and offered to prove by him that he had lent the plaintiff $1500 in 1867; to be followed by proof that when the note was given the circumstances, &c., of the decedent were such as not to require him to have the amount of money for which the note was given; that the circumstances of the plaintiff at and before the note was given were not such as to enable him to lend the amount of money in the note or pay it for the decedent; that the plaintiff as son-in-law of the decedent was dissatisfied with his will, and that notwithstanding he did not present the note to the executrix for payment, nor inform her of its existence until he brought suit, that being his first demand for payment; that the executrix settled her final account of the estate October 3d 1867; that at the date of the note the decedent and plaintiff were on unfriendly terms; that when the will was read after the death of the testator, the plaintiff asked defendant and others who were present whether the decedent had any debts, that defendant said there were none so far as she knew, and the plaintiff made no reply; that both before and after the date of the note the plaintiff was largely indebted and paying interest.

The plaintiff objected to the offer of the testimony of Hess, it was admitted and a bill of exceptions sealed.

Hess testified in accordance with the offer.

The defendant gave much evidence in detail of the matters proposed to be proved in following up the testimony of Hess.

He also gave evidence that neither the plaintiff nor his wife were at the decedent's funeral.

The will of the decedent was dated January 17th 1863, and proved March 28th 1864. It was read to the family in the presence of the plaintiff and his wife about 30 days after decedent's death. The final account of the executrix was filed October 3d 1867.

The plaintiff gave evidence in rebuttal tending to show that he had pecuniary ability to lend the amount mentioned in the note; accounting for the delay in not presenting the note and in bringing suit.

To the notes of testimony was appended the following:

"All the foregoing testimony was received by the court under

[Hartman *v.* Shaffer.]

the first bill of exception, with the same effect as if a special bill
of exception had been taken and allowed to each offer of testimony.
          A. B. LONGAKER, Presiding Judge.   [L. S.]"

The plaintiff's points were:—

1. Under all the evidence in the case the verdict must be for
the plaintiff.

2. The evidence given on the part of the defendant constitutes
no defence to the plaintiff's claim.

3. The jury cannot legitimately infer from the evidence given
on the part of the defendant that there was no consideration for
the note in suit.

These points were denied.

4. The execution of the note by Christian Shaffer and its pos-
session by the plaintiff is primâ facie evidence of a consideration,
and that there is no evidence in the cause showing want of con-
sideration.

The answer was:—The first part of this point is true and affirmed,
but the question of want of consideration is a fact for the jury.

The defendant's 4th point which was affirmed was:—

If the jury believe that the plaintiff has failed to-prove a con-
sideration for the note in suit, such failure is a circumstance which
the jury may consider in determining whether there was an actual
consideration.

The verdict was for the defendant.

The plaintiff removed the record to the Supreme Court by writ
of error.

He specified 10 errors to the admission of evidence all assigned
in the same manner.   The 1st was:—

"The court erred in permitting the defendant to prove that the
plaintiff had given mortgages in 1829 for $1000, in 1835 for
$1400, in 1844 for $1200, and in 1864 for $500."

Four other assignments were to the answers of the court to the
plaintiff's points.

The 15th was the answer to the defendant's 4th point.

· *V. Hilburn* and *E. J. Fox*, for plaintiff in error.—A promis-
sory note is conclusive evidence of a pecuniary consideration : Ed-
wards on Bills 78, 3111 ; Hughes *v.* Wheeler, 8 Cowen 77 ; Goshen
Turnpike Co. *v.* Hurtin, 9 Johns. 217 ; Bank of Troy *v.* Topping,
13 Wend. 569.   When the execution was proved and the note
given in evidence, the plaintiff was not required to make any fur-
ther proof until the consideration of the note was impeached by
the defendant : Knight *v.* Pugh, 4 W. & S. 447 ; Swain *v.* Ett-
ling, 8 Casey 491 ; Maples *v.* Browne, 12 Wright 462.

*O. H. Myers* and *H. Green*, for defendant in error.—The exe-

[Hartman v. Shaffer.]

cution of a note raises only a primâ facie presumption, liable to be rebutted: Swain v. Ettling, 8 Casey 491; Byles on Bills 92; Stauffer v. Young, 3 Wright 455; United States v. Price, 2 W. C. C. R. 460.

The opinion of the court was delivered, May 13th 1872, by

SHARSWOOD, J.—The eighth of the rules of this court, adopted at Pittsburg, September 6th 1852, 6 Harris 578, provides that "when the error assigned is to the admission or rejection of evidence, the specification must quote the full substance of the bill of exceptions, or copy the bill in immediate connection with the specification. Any assignment of error not according to this rule will be held the same as none." This rule has been entirely disregarded in the assignment of errors in this case. There are ten errors assigned to the admission of testimony. There are, however, but two bills of exceptions, neither of which are assigned according to the rule. There was in the first instance an offer of testimony to be followed by other evidence, which was admitted and a bill of exceptions sealed. At the close of the evidence the judge gave a sweeping exception to all the evidence which had been produced by the defendant "with the same effect as if a special bill of exception had been taken and allowed to each offer of testimony." Without setting out either of these bills in his specifications of error as ground of complaint the defendant picks out from the whole mass of the testimony ten particulars which he declares to have been irrelevant and inadmissible. Such a mode of assigning errors is manifestly contrary both to the letter and spirit of the rule, and must accordingly be held "the same as none."

The real question, however, on the merits of the cause is presented by the remaining assignments—whether there was any evidence given which ought to have been submitted to the jury as tending to make out the defence, that there was no consideration for the note in suit. In every case of a promissory note the prima facies is in this respect in favor of the payee. It imports a valuable consideration. It is also undoubtedly true that without some evidence to cast suspicion upon the transaction—the pecuniary circumstances of the respective parties and their relations to each other would be irrelevant and calculated to mislead the jury: Woods v. Gummert, 17 P. F. Smith 136. But where there is evidence tending to show unfairness, undue influence or fraud, the evidence may take a wide range: Reinhard v. Keenbartz, 6 Watts 93; Kauffman v. Swar, 5 Barr 230; Stevenson v. Stewart, 1 Jones 307. The plaintiff below did not commence his case in the usual way by proof of the signature of the maker of the note but called two witnesses—his son and daughter—to prove its execution. The maker was his father-in-law and a man ninety-one

years old. The testimony of the daughter was that her father and grandfather were together, and her father called her in from an adjoining room. They were making calculations—had before them two old notes—whose she does not say—"they said they had given the old notes one of $1500 and one of $349." "She did not recollect to whom they said they had given the old notes." The father told her to write the note for $4300, which she did and her grandfather signed it. The son Peter testified substantially to the same facts. This was in March 1863. The old man died in January 1864. These witnesses testified and without contradiction by Francis Hartman, who was also examined, that three weeks afterwards when the will of Christian Shaffer was read, he, Francis Hartman, was present and asked Hannah Shaffer, the executrix, whether there were any debts—she replied there were none, and he was silent. The account of the executrix was filed in the Register's office October 3d 1867, and this suit was brought May 20th, 1869. The note was drawn payable two years after date and was not due therefore until March 27th, 1865. It is true there was no absolute estoppel or bar in all this, but these were circumstances tending strongly to shake the primâ facie presumption in favor of the instrument, and therefore enough to allow a wide latitude to be given to the evidence to show from the circumstances and relations of the parties the improbability that any valuable consideration existed for the note. To this is to be added the fact that Christian Shaffer did not speak English; he could understand only a few words; he could not read or write English. The note is written in English but the signature is in German. The granddaughter read it to him in English because as she says it was written in English; but she did not explain it in German. There is here indeed no direct evidence of fraud or undue influence, but it is impossible to say that it was not the question in the cause. No one pretended that Christian Shaffer meant to give this amount of money to his son-in-law Francis Hartman. If the two notes present and upon which they were calculating when the note in suit was signed, were notes of Christian Shaffer held by Francis Hartman and formed the consideration which seems to be the theory of the plaintiff below—for no other consideration was attempted to be shown—they must have been running more than twenty years without payment of interest in order to make the amount of $4300. It can hardly be maintained that it was irrelevant to show that during this period Hartman was borrowing money and mortgaging his farm, and that on the other hand Christian Shaffer was in comfortable circumstances and in no need of borrowing money. His will showed that he had considerable real estate which he disposed of among his daughters. We cannot say then that the court below erred in submitting this case to the jury. There was undoubtedly rebutting evidence to all this produced

[Hartman v. Shaffer.]

by the plaintiff. It is not our province to weigh this evidence. That was for the jury under the supervision of the court below on a motion for a new trial.

Judgment affirmed.