# Perkins v. Humes, Appellant.

*Promissory notes—Evidence—Pecuniary condition of parties.*

In an action against executors on promissory notes alleged to have been given by decedent for money loaned to her, it is proper to exclude evidence, in the absence of fraud, that at the time of the alleged loans the plaintiff was hard pressed for money, and had been for considerable time, and had several judgments entered against him, together with evidence to the effect that the decedent, who was old, invalid, and not engaged in any business requiring the use of money, had $4,000 in the bank at the said time.

*Practice, C. P.—Rule of court—Promissory notes.*

A rule of court that the execution of a promissory note shall be taken as admitted at the trial, unless the defendant, or some one in his behalf shall deny its execution on oath, does not apply to executors and administrators.

In an action against executors on promissory notes, the plaintiff's statement of claim in which copies of the notes are set forth, is not evidence of the execution of the notes.

Argued April 30, 1901. Appeal, No. 147, Jan. T., 1901, by defendant, from judgment of C. P. Crawford Co., Sept. T., 1900, No. 116, on verdict for plaintiff in case of C. D. Perkins v. Porter C. Humes, Executor of Sythera B. Humes, Deceased. Before McCollum, C. J., Mitchell, Fell, Brown and Potter, JJ. Reversed.

Assumpsit on two sealed promissory notes.

At the trial plaintiff's counsel offered in evidence statement of claim filed in this case, showing the statement of claim and copy of the notes on which this suit is brought.

Defendant's counsel: For what purpose?

Plaintiff's counsel: For the purpose of proving the execution of the instruments.

Defendant's counsel object to that as not competent.

The Court: Objection overruled, evidence admitted, and bill of exceptions sealed for the defendant. [1]

Defendant's counsel offered in evidence judgment against C. D. Perkins et al.:° Meadville Savings Bank v. C. D. Perkins et al.

Plaintiff's counsel object, and want to know the purpose of this offer.

Defendant's counsel propose to prove by C. D. Perkins, upon his arrival, if not upon his arrival, by his declarations, that these notes were given for money loaned to Mrs. Humes in 1889.

To be followed by evidence that at the time of the alleged loans by him, he was, and had been, hard pressed for money for many years ; many judgments had been entered against him at that time, something like fifteen or eighteen, many executions; that he was in impecunious circumstances.

To be followed by evidence that upon the other hand, in the very year when he alleges that the money was loaned by him to her, she had $4,000 in the bank, was old and an invalid, and not engaged in any business requiring the use of borrowed money.

And that for the purpose of asking the jury to infer that there was no consideration for the notes.

Plaintiff's counsel: That would not be a defense in this case; that purpose is not a competent defense.

The Court: I do not see that it is competent for that purpose.

Objection sustained and bill of exceptions sealed for the defendant. [2]

Defendant's counsel proposed to prove that the plaintiff testified upon the trial of this case before the arbitrators, that these notes were given in renewal of other notes, which were given him as security for a loan made by him to Mrs. Humes, the decedent, in 1889.

To be followed by evidence tending to show that the plaintiff at the time of making the alleged loans to her in 1889, was and had been for many years hard pressed for money.

That to be followed by evidence that at the time of making the loans, Mrs. Humes had $4,000 in the bank in her own right; that she owned real estate worth $5,000 or $6,000; that she was old, infirm, and an invalid, and not engaged in any business, nor had she been for many years requiring money.

And this for the purpose of showing that the notes were not given him as security for a loan of money, as alleged by him on the trial of the arbitration.

Plaintiff's counsel object, because it is not relevant, nor competent for the purpose stated.

The Court: Objection sustained and bill of exceptions sealed for the defendant. [3]

Verdict and judgment for plaintiff for $3,640.83. Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions.

*George F. Davenport*, and *Thomas Roddy*, for appellant.— The reason for the action of the courts in not requiring an administrator or executor to file an affidavit of defense is equally applicable to the rule of court, which makes the copy of note annexed to the statement of claim admissible in evidence without proof of its execution, unless its execution be denied on oath: National Bank v. Detwiller, 8 Pa. Dist. Rep. 515.

Where a valuable consideration is contracted for and intended to be given, if no consideration is actually received by the obligor, it may be shown by way of defense: Yard v. Patton, 13 Pa. 278; Candor and Henderson's Appeal, 27 Pa. 119.

*George W. Haskins*, with him *Thomas J. Prather* and *John O. McClintock*, for appellee.—The failure to deny the execution of the instrument is to give notice that that question will not be contested.

An executor may make admissions that will bind the estate, or waive a form of proof: Anderson v. Washabaugh, 43 Pa. 115; Bennett v. Fulmer, 49 Pa. 155; Ritter's App., 23 Pa. 95.

Why might not the executor waive the necessity of the plaintiff proving the execution of the notes in this case? And if he did, he would not at the time of trial, when the plaintiff had relied on this waiver, be allowed to retract the waiver and require proof of their execution : Odenheimer v. Stokes, 5 W. & S. 175.

In an action on a bond or note under seal want of consideration is no defense : Cosgrove v. Cummings, 195 Pa. 497 ; Anderson v. Best, 176 Pa. 498; Burkholder v. Plank, 69 Pa. 225; Oberly v. Oberly, 190 Pa. 341.

Without some evidence already in the case to cast suspicion upon the transaction, the pecuniary circumstances of the respective parties and their relations to each other would be irrelevant and calculated to mislead the jury: Hartman v. Shaffer, 71 Pa. 312; Woods v. Gummert, 67 Pa. 136.

OPINION BY MR. JUSTICE BROWN, July 17, 1901:

There was no allegation by the appellant of any fraud on the part of the appellee in connection with the execution and delivery of the notes upon which this suit was brought, and there was no evidence to cast suspicion upon his conduct in procuring them. Whether they were given for loans made at the time of their execution, or in renewal of others that had been so given, made no difference in the liability of the estate of the deceased to pay them; and the offers which are the subject of the second and third assignments, to show the pecuniary circumstances of the parties, were irrelevant and calculated only to mislead the jury. If there had been any evidence of fraud in procuring the notes, the offers ought to have been allowed; as there was none, they were properly refused : Hartman v. Shaffer, 71 Pa. 312. " But surely it is not to be inferred from this that wherever a plaintiff brings an action for goods sold and delivered or money lent and advanced, or paid, laid

out, and expended, that it is competent to the defendant to give evidence of the pecuniary inability of the plaintiff and thus raise an issue entirely collateral. What legitimate inference in such a case can be drawn from the insolvency of the plaintiff? Men heavily indebted and even keeping their creditors at bay, often have large transactions in borrowing and lending, and are possessed of considerable sums of money. If the defendant is allowed to show that the plaintiff owes debts which he does not pay, the plaintiff may certainly rebut the evidence by showing that he has a good defense to them. Thus, innumerable collateral issues might be introduced. The case below was not a case so far as appears in which any issue of fraud was raised. The fraud which the defendant alleged was simply that of setting up an unfounded claim. The same fraud could with equal propriety be alleged in every action:" Woods v. Gummert, 67 Pa. 136.

The first assignment of error must be sustained. Even if the appellee was not required to prove the execution of the notes because, as he contended, the appellant had not denied under oath, as required by the rule of court, that they bore the genuine signatures of the deceased, the admission of the plaintiff's statement as a piece of evidence in the cause was as novel as it was clearly wrong. The purpose of offering it was said by the plaintiff to prove the execution of the notes. If their execution was admitted, no proof was required; if it was not admitted, the plaintiff could not offer them in evidence until he had properly shown that they had been signed by the deceased. Plaintiff's statement, offered in evidence, contained copies of the notes and was signed by counsel, but not even sworn to by the plaintiff. It alleged that "Sythera B. Humes, during her lifetime, promised to pay the same to the plaintiff, but did not do so." All of this was read to the jury and naturally regarded by them as legitimate evidence of the liability of the decedent. It is hardly required of us to say that we cannot conceive how an offer of a statement like this, even in a contest between living parties, could be seriously made as evidence of the defendant's liability; but, when it is admitted and read to a jury to fix the liability of the estate of the dead to a living plaintiff, the court's sanction of it as evidence is glaring error. The rule under which the appellee now con-

tends he was not required to prove the execution of the notes is as follows : " In actions founded upon deed, bond, note, bill, recognizance, mortgage, assignment, or other instrument, of writing, for the payment of money or the performance of stipulated duties, a copy of which shall have been filed at or before the time of filing the narr. or statement, the execution of such paper or writing, including the handwriting of drawer, acceptor, or indorser thereof, shall be taken as admitted on the trial, unless the defendant or some one in his behalf shall deny its execution on oath within the time prescribed for filing affidavits of defense." The enforcement of this rule against an executor is practically to require him to file an affidavit of defense when sued upon some written instrument alleged to have been executed by the testator ; but we have held that he is not required to file an affidavit of defense in a suit on any contract made by his decedent where the cause of action arose before the latter's death : Mutual Life Insurance Co. v. Tenan, 188 Pa. 239. " In many, perhaps in all the judicial districts where rules of court, in the absence of statutory provision, have required specific defenses to be set out, actions against executors and administrators have been expressly exempted from their operation. Where the practice has been regulated by statute, such actions have uniformly been held not to have been within the legislative intention. Such a construction is indispensable to protect interests that would be otherwise defenseless, and to afford security to creditors, distributees and heirs. In no ordinary case would it be possible for a personal representative to set out on oath in specific detail the nature and incidents of a transaction to which his decedent had been a party and to which he was a stranger. A dead man's estate would be in utter peril, if a creditor could convert his demand into a judgment upon no proof other than the statement of his claim filed at the commencement of his suit. And yet, a rule that would require an affidavit from an executor or administrator would work just that result : " Seymour v. Hubert, 83 Pa 346. The judgment here was obtained by the reading of the plaintiff's statement of his cause of action and the alleged promise of the decedent therein contained, and not even on the notes themselves, for, though produced, they do not appear to have been offered in evidence.

In a suit on an alleged contract made by a decedent, the proof of liability should be express. In many cases, the personal representative may know that it exists and that no suit is needed to enforce it. In others, he may not know, even in the face of apparent written obligations of the decedent, but may have just suspicion as to their genuineness and feel that the holder of them ought to be put to proof of their execution, even though he himself might not be willing to deny it under oath. He might even have a belief that the obligations are not genuine, and yet probably be unwilling so to swear. Every safe-guard should be thrown around the estates of the dead, whose lips are sealed, and no statute or rule of court, unless by its express words, should ever be held to apply to an executor or administrator in its requirement of a denial, under oath, of liability in advance of legitimate proof of the same. No one representing the dead should be called upon to speak until first spoken to and confronted with proper proof of liability. An executor ought not to be embraced within the rule referred to, and, in saying that he is not, we simply reaffirm our utterances as to the exemption of personal representatives of the dead from rules requiring affidavits of defense.

The judgment of the court below is reversed and a venire facias de novo awarded.